RECORD NUMBER: 12-5005(L), 12-5022

# United States Court of Appeals

## *for the*

# Fourth Circuit

---

**UNITED STATES OF AMERICA,**

*Appellee,*

– v. –

**DAVID STUCKEY, a/k/a Shortstop,**
**DEMARIO COVINGTON, a/k/a Booger,**

*Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF SOUTH CAROLINA AT FLORENCE

# CORRECTED OPENING BRIEF OF APPELLANTS

**MELVIN W. COCKRELL, III**
**COCKRELL LAW FIRM, PC**
**159 Main Street**
**Chesterfield, SC  29709**
**P:  (843) 623-5911**
**F:  (843) 623-5700**
**cockrell@shtc.net**

*Counsel for Appellant Covington*

**NICOLE NICOLETTE MACE**
**THE MACE FIRM**
**1341 44th Avenue North**
**Suite 205**
**Myrtle Beach, SC  29577**
**P:  (843) 839-2900**
**F:  (843) 839-2913**
**nen@themacefirm.com**

*Counsel for Appellant Stuckey*

CP  COUNSEL PRESS • VA – (800) 275-0668

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF JURISDICTION................................................................ 1

STATEMENT OF THE ISSUES.................................................................... 2

STATEMENT OF THE CASE....................................................................... 2

STATEMENT OF THE FACTS .................................................................... 4

SUMMARY OF THE ARGUMENT ........................................................... 12

ARGUMENT ............................................................................................... 13

    I.    The District Court Abused Its Discretion When It Denied
        Defense Counsel's Motion To Withdraw As Counsel ................. 13

        A. Standard of Review ................................................................. 13

        B. The district court should have granted defense counsel's
            motion to withdraw as counsel based on the *Mullen* factors ... 13

            1.  The Motion To Withdraw Was Timely ............... 14

            2.  The District Court Did Not Perform An
                Adequate Inquiry Into Stuckey's Complaints ..... 15

            3.  The Conflict Between Defense Counsel And
                Stuckey Was So Great It Affected Stuckey's
                Defense ............................................................. 17

    II.   The District Court Abused Its Discretion When It Denied
        Stuckey's Motion to Withdraw His Guilty Plea Because the
        Application of the *Moore* Factors Were in Favor of Allowing
        Stuckey to Withdraw His Guilty Plea ........................................... 20

        A. Standard of Review ................................................................. 20

B. *Moore* Factors.................................................................... 20

    1. Stuckey's plea was not knowing and voluntary .. 21

    2. Stuckey credibly asserted his legal innocence..... 24

    3. There was a minimal delay between the entry of the guilty plea and the filing of the withdraw motion ................................................................. 25

    4. Stuckey did not have close assistance of counsel ............................................................... 26

    5. Withdrawal would not prejudice the government ......................................................... 29

    6. Withdrawal would not inconvenience the district court or waste judicial resources ............. 30

III. The district court abused its discretion when it denied Covington's pro se motion to withdraw his guilty plea but granted Covington's pro se motion to withdraw counsel when a majority of the Moore factors weighed in Covington's favor....... 30

A. Standard of Review ................................................ 30

B. *Moore* Factors.................................................................... 31

    1. Covington's plea was not knowing and voluntary ............................................................ 32

    2. Covington credibly asserted his legal innocence ........................................................... 35

    3. There was minimal delay between the entry of the guilty plea and the filing of the withdrawal motion ................................................................. 36

4.   Covington did not have close assistance of
     counsel ........................................................... 36

5.   Withdrawal would not prejudice the
     government .......................................................... 40

6.   Withdrawal would not inconvenience the
     district court or waste judicial resources ............. 41

CONCLUSION ........................................................... 41

STATEMENT REGARDING ORAL ARGUMENT ................................. 42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Blackledge v. Perry*,
    417 U.S. 21 (1974)...................................................................... 22, 23

*Bradshaw v. Stumpf*,
    545 U.S. 175 (2005).................................................................... 22, 32

*Brady v. United States*,
    397 U.S. 742 (1970).................................................................... 22, 32

*Carter v. Lee*,
    283 F.3d 240 (4th Cir. 2002) ...................................................... 26, 36

*Cuyler v. Sullivan*,
    446 U.S. 335 (1980)........................................................................ 14

*Edmonds v. Lewis*,
    546 F.2d 566 (4th Cir. 1976) ...................................................... 23, 34

*Kimmelman v. Morrison*,
    477 U.S. 365 (1986)........................................................................ 14

*Missouri v. Frye*,
    566 U.S. ____, 132 S. Ct. 1399 (2012) ....................................... 27, 38

*North Carolina v. Alford*,
    400 U.S. 25 (1970)...................................................................... 22, 33

*Padilla v. Kentucky*,
    559 U.S. 356, 130 S. Ct. 1473 (2010) ........................................ 27, 38

*Smith v. Lockhart*,
    923 F.2d 1314 (8th Cir. 1991) ........................................................ 16

*Strickland v. Washington*,
    466 U.S. 668 (1984).................................................................... 26, 37

iv

*United States v. Adelzo-Gonzalez,*
        268 F.3d 772 (9th Cir. 2001) ............................................................ 17

*United States v. Bowman,*
        348 F.3d 408 (4th Cir. 2003) ..................................... 20, 21, 26, 31, 36

*United States v. Cline,*
        286 F. App'x 817 (4th Cir. 2008) ................................................ 24, 35

*United States v. Craig,*
        985 F.2d 175 (4th Cir. 1993) ........................................................ 26, 36

*United States v. D'Amore,*
        56 F.3d 1202 (9th Cir. 1995) ............................................................ 18

*United States v. DeFreitas,*
        865 F.2d 80 (4th Cir. 1989) .......................................................... 21, 32

*United States v. Faris,*
        388 F.3d 452 (4th Cir. 2004) .......................................... 29, 30, 40, 41

*United States v. Gallop,*
        838 F.2d 105 (4th Cir. 1988) ........................................................ 14, 15

*United States v. Garrett,*
        179 F.3d 1143 (9th Cir. 1999) (en banc) .......................................... 18

*United States v. Johnson,*
        114 F.3d 435 (4th Cir. 1997) ........................................................ 15, 19

*United States v. Johnson,*
        332 F. App'x. 81 (4th Cir. 2009) .................................................. 30, 41

*United States v. Lambey,*
        974 F.2d 1389 (4th Cir. 1992) ...................................................... 20, 31

*United States v. Massenburg,*
        383 F. App'x 371 (4th Cir. 2010) ...................................................... 26

*United States v. Moore*,
     931 F.2d 245 (4th Cir. 1991) ........................................................ 21, 32

*United States v. Moussaoui*,
     591 F.3d 263 (4th Cir. 2010) ........................................................ 22, 33

*United States v. Mullen*,
     32 F.3d 891 (4th Cir. 1994) ................................................... 13, 14, 16

*United States v. Wilson*,
     81 F.3d 1300 (4th Cir. 1996) ................................................. 20, 21, 31

## **Rules, Statutes, and Other Authorities**

18 U.S.C. § 3231 ..................................................................................... 1

18 U.S.C. § 3742 ..................................................................................... 1

21 U.S.C. § 841(a)(1) ........................................................................... 1, 2

21 U.S.C. § 841(b)(1)(A) ...................................................................... 1, 2

21 U.S.C. § 841(b)(1)(C) ...................................................................... 1, 3

21 U.S.C. § 846 .................................................................................... 1, 2

28 U.S.C. § 1291 ..................................................................................... 1

Fed. R. Crim. P. 11(d) ........................................................................ 20, 31

U.S. Const. amend. VI ............................................................................. 14

# STATEMENT OF JURISDICTION

This is a criminal case.   David Stuckey and Demario Covington were prosecuted under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and 21 U.S.C. § 846. Covington was also prosecuted under 21 U.S.C. § 841(b)(1)(C).  The United States District Court for the District of South Carolina had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the appellants were charged with an offense against the laws of the United States.

The appeal is from the final judgment.  The Fourth Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the Courts of Appeals jurisdiction over all final decisions and sentences of the District Courts of the United States.  The district court imposed Stuckey's sentence on December 4, 2012, final judgment was entered on December 11, 2012, and a timely notice of appeal was filed on December 4, 2012. The district court imposed Covington's sentence on December 13, 2012, final judgment was entered on December 14, 2012, and a timely notice of appeal was filed on December 13, 2012.

## STATEMENT OF ISSUES

### DAVID STUCKEY

David Stuckey submits his initial brief on the following issue(s):

1. Whether the district court erred in denying defense counsel's motion to withdraw when the motion was timely made and both defense counsel and defendant attested to a breakdown in their relationship.

2. Whether the district court erred in denying Stuckey's motion to withdraw his guilty plea when a majority of the *Moore* factors weighed in Stuckey's favor.

### DEMARIO COVINGTON

Demario Covington submits his initial brief on the following issue(s):

1. Whether the district court erred in denying Covington's motion to withdraw his guilty plea and granting Covington's motion to withdraw counsel when a majority of the *Moore* factors weighed in Covington's favor.

## STATEMENT OF THE CASE

David Stuckey and Demario Covington were the defendants in the district court and will be referred to by name or as appellants. The appellee, United States of America, will be referred to as the government.

On March 22, 2011, a 19-count indictment was returned. (J.A. 591) Count 1 charged David Stuckey and Demario Covington with violating 21 U.S.C. §§

2

841(a)(1) and 841(b)(1)(A); all in violation of 21 U.S.C. § 846, by knowingly conspiring to unlawfully possess with intent to distribute and distribute 5 kilograms or more of cocaine and 280 grams or more of cocaine base. Covington was also charged with violating 21 U.S.C. § 841(b)(1)(C) by knowingly and intentionally distributing a quantity of cocaine base on December 9, 2009. (J.A. 33-34)

On March 30, 2012, Stuckey's defense counsel filed a motion to be relieved as counsel. (J.A. 37) The district court denied defense counsel's motion. (J.A. 82-83) On May 14, 2012, Stuckey pled guilty to Count 1 of the indictment pursuant to a written plea agreement. (J.A. 112-115) On July 9, 2012, Stuckey filed a motion to withdraw his guilty plea. (J.A. 296) The district court denied his motion. (J.A. 343) Stuckey's sentencing hearing was held on December 4, 2012. The district court sentenced Stuckey to 360 months imprisonment and 10 years supervised release. (J.A. 566) Stuckey filed a Notice of Appeal on December 4, 2012. (J.A. 15)

On May 15, 2012 Covington pled guilty to Count 1 of the indictment pursuant to a written plea agreement. (J.A. 267-281) On August 14, 2012 Covington field a pro se motion to withdraw his guilty plea along with a pro se motion to withdraw counsel. (J.A. 309, 312) The district court denied his motion to withdraw his guilty plea but granted his motion to withdraw counsel. (J.A. 375-398) Covington's sentencing hearing was held on December 13, 2012. The

district court accepted an addendum to the original plea agreement and sentenced Covington to 420 months imprisonment and 10 years supervised release. (J.A. 575-577) Covington filed a Notice of Appeal on December 13, 2012. (J.A. 586)

## STATEMENT OF FACTS

### DAVID STUCKEY

**Motion to be Relieved as Counsel**

On March 30, 2012, a month before trial, defense counsel filed a motion requesting to be relieved as counsel. (J.A. 37) Specifically, defense counsel stated that the "relationship has reached an impasse, it is adversarial, it is counterproductive, and the best avenue for protection of the defendant's constitutional rights cannot be afforded him under these circumstances and conditions." (*Id.*) A motion hearing was held on April 3, 2012. (J.A. 38)

During the motion hearing, defense counsel stated that it was in the best interests of Stuckey for him to be relieved as counsel because the conversations between them were not productive. (*Id.* at 45-50) In response, Stuckey first stated that he had not been in contact with counsel for an extended period of time when he was being moving across facilities to have a mental evaluation conducted. (*Id.* at 52) During that time, he tried to contact counsel on several occasions and could not reach him. (*Id.*) He eventually had a family member speak with counsel and counsel informed them that the collect calls are too expensive. (*Id.*) Second,

Stuckey informed the district court that he had asked his attorney to file a number of motions on his behalf. (*Id.* at 59) Counsel admitted that he refused to file these motions. (*Id.* at 49-50) While granting a majority of Stuckey's motions, the district court stated:

> Now, you can decide that you do not want to have anything to do with your second lawyer. But if you want to be in dispute with him at all times, you can decide that, if you want to do that. But it is not in your best interest to do it. That does not mean that the lawyer dictates everything to you. But [counsel], from what I have experienced in court today and other times, he is willing to talk.

(*Id.* at 71) Third, Stuckey was unaware that counsel had an investigator appointed on his case. (*Id.* at 72) The district court replied:

> What do you want him to do? He is an experienced lawyer. That is what he is doing. He is doing it. So, for you to tell me that he did not tell you soon enough, I do not think it makes any difference. You had better listen to what he is doing on your behalf, because that is what he did.

(*Id.* at 73)

Stuckey emphasized to the district court that there was a lack of communication between himself and counsel. (*Id.* at 74) He stated that he no longer wanted counsel to represent him because he felt uninformed about his case. (*Id.* at 75) Counsel also explained the futility of their relationship: "If [Stuckey is] not going to cooperate, I'm wasting my time going up [to the jail] . . . [i]t's just a

dead end." (*Id.* at 75-76)  Despite counsel and Stuckey's statements, the district court denied the motion to be relieved as counsel.  It held that the fact that Stuckey and his counsel were not getting along was insufficient to appoint new counsel; that the motion was an effort by Stuckey to delay trial; and that there is communication between counsel and Stuckey.  (*Id.* at 82-83)

## **Motion to Withdraw Guilty Plea**

On May 14, 2012, the day before trial, a guilty plea hearing was held.  (J.A. 208-209)  The plea agreement stated that, in exchange for Stuckey's guilty plea, the government would withdraw all, except one, of the 851 enhancements.  (*Id.* at 236)  As a result, Stuckey would be facing a term of 20 years to life rather than a mandatory term of life.  (*Id.*)  During the hearing, when asked whether Stuckey had sufficient time to consult with counsel, he responded that he had not.  (*Id.* at 213)  When the district court asked whether he needed more time, Stuckey stated, "Yes, sir.  But at this point of the case, it might be a little too late for my interest." (*Id.* at 214)  Stuckey felt that he had not had sufficient time to discuss his case with his attorney.  (*Id.* at 213-215)  Stuckey ultimately decided to plead guilty to Count 1. (*Id.* at 233, 259)

Less than two months later, on July 9, 2010, Stuckey filed a *pro se* motion to withdraw his guilty plea.  (J.A. 296)  In his motion, Stuckey informed the district court that he felt coerced by counsel because counsel told him that there was no

chance of winning his trial. (*Id.*) As a result, Stuckey believed that counsel would not adequately represent him if his case proceeded to trial. (*Id.*) A motion hearing was held on August 29, 2012. (J.A. 319)

At the hearing, counsel admitted that Stuckey wanted to speak with the prosecutors and Stuckey had not conferred with him or asked for his advice. (*Id.* at 218) Counsel also noted that Stuckey did not want him present during plea negotiations. (*Id.*) When Stuckey concluded the meeting, counsel asked what he desired to do. (*Id.*) Stuckey stated he wanted to plead guilty. (*Id.*) Counsel acknowledged that he informed the district court of Stuckey's desire to undergo plea negotiations alone. (*Id.*)

Stuckey stated that counsel told him that there was no likelihood of success at trial and he felt compelled to plead guilty:

> And about me talking with [the prosecutors] after he came on trial date and came and talked to me in the room, he said my chances was no way possible of winning a trial. How am I going to go to trial with my attorney when he telling me I have no chance of winning a trial and a month before trial he filed a motion to be relieved from my counsel.
>
> I feel like he wasn't going to give me his full capability of representing me for my freedom. That's why I am talking with [the prosecutors] and telling them I'm wanting to plea, because how I am going to trial if he file a motion a month later saying he want to be dismissed from my counsel.

7

(*Id.* at 335)    The district court ruled that there was no fair and just reason to withdraw the guilty plea.  (*Id.* at 343)  Specifically, the district court found that the plea was knowing, that Stuckey had not credibly asserted his legal innocence; that there was a two month delay in filing the motion; that Stuckey had close assistance of competent counsel; that withdrawal would prejudice the government; and that withdrawal would inconvenience the court and waste judicial resources because a jury had already been selected at the time of the plea.  (*Id.* at 343-345)

**Sentencing Hearing**

A sentencing hearing was held on December 4, 2012.  (J.A. 433)  Stuckey received a total offense level of 37 and a criminal history category of VI.  (*Id.* at 522)  Stuckey was classified as a career offender.  (*Id.* at 521-522)  Stuckey was sentenced to 360-months imprisonment and 10 years supervised release.  (*Id.* at 544)  This appeal follows.

## DEMARIO COVINGTON

**Motion to Withdraw Plea**

On May 15, 2012, the day of trial, a guilty plea hearing was held.  (J.A. 262-263)  The plea agreement stated that, in exchange for Covington's guilty plea, the government would withdraw all, except one, of the 851 enhancements.  (J.A. 267-268)  As a result, Covington would be facing a term of 20 years to life rather than a mandatory term of life.  (J.A. 269-270)  During the hearing, when asked if he

conspired with others to sell crack cocaine Defendant Covington asked for a moment to speak with his attorney. (J.A. 284) Defendant Covington's attorney made the statement that Covington wished to make it clear that he was not present when law enforcement recorded 50 grams of crack cocaine. (*Id.*) The Court stated that whether Covington was present or not, the government asserted that there was a connection between him and those drugs. (*Id.*) The Court later asserted that if there were a debate about the amount of crack cocaine sold it would be addressed at the sentencing stage. (J.A. 285-286)

Less than 3 months later, on August 14, 2012, Covington filed pro se motions to withdraw his guilty plea and to relieve counsel. (J.A. 309, 312) In his motion to withdraw his guilty plea, Covington informed the district court that he was forced to enter his plea involuntarily at the direction of incompetent counsel. (J.A. 309) In his motion to relieve counsel, Covington informed the court that counsel forced him to plead guilty, despite the fact that he urged counsel to go to trial. (J.A. 312-315) Covington further informed the court that counsel told him if he did not plead guilty he would get life in prison, but if he did plead guilty he would only get 20 years or less. (*Id.*) Covington believed that counsel would not adequately represent him if his case proceeded to trial and that if he pled guilty, he was assured to get 20 years or less imprisonment. (*Id.*) A motion hearing was held on September 14, 2012.

9

At the hearing, Covington stated that counsel forced him into taking the plea and when Covington asked what the language of the plea meant, counsel informed him that he himself didn't know what it meant. (J.A. 363) Covington further stated to the district court that counsel stated the jury was not a jury of his peers because they were all white and would find him guilty, but if he plead he would get 20 years or less. (J.A. 365-369) Covington stated that counsel told him that there was no likelihood of success at trial and he felt compelled to plead guilty. (*Id.*) The district court ruled that there was no reason to withdraw the guilty plea. (J.A. 385) Specifically, the district court stated that although there was a question as to how much crack was recovered; the district court found that Covington knowingly entered into the plea, that Covington had not credibly asserted his legal innocence; that Covington had close assistance of competent counsel; that withdrawal would prejudice the government; and that withdrawal would inconvenience the court and waste judicial resources because a jury had already been selected and witnesses were present and prepared to testify at the time of the plea. (J.A. 383-387)

**Motion to Relieve Counsel**

On August 14, 2012, less than three months after Covington's guilty plea hearing, Covington filed a *pro se* motion to relieve counsel. (J.A. 312) Specifically, Covington stated that counsel was ineffective, that counsel lied to him, that he did not understand the plea agreement and that counsel knowingly

10

misguided him into believing that by entering a guilty plea he would be facing 20 years of less of incarceration. (J.A. 312)  A motion hearing was held on September 14, 2012. (J.A. 361)

During the motion hearing, Covington stated that counsel did not assist him, did not himself understand the language of the plea agreement and that counsel told him to go along with the plea agreement. (J.A.  389-931)   In response, counsel offered nothing except that Covington was making his own decision. (J.A. 394)

Thereafter, the district court granted Covington's motion to relieve counsel and appointed him with new counsel.  (J.A. 397-398)

**<u>Sentencing Hearing</u>**

A sentencing hearing was held on December 13, 2012.  (J.A.  555) Covington entered into an addendum to the original guilty plea and received a 420 month sentence along with 10 years of supervised release.  (J.A. 575-577)  The district court acknowledged that Covington's total offense level under the guidelines was a 43 and Covington's criminal history category was a VI and that Covington would classify as a career offender.  (J.A. 568)  The district court further acknowledged that it would not address the objections based on the recommendation stipulated sentence.  (*Id*.)  This appeal follows.

## SUMMARY OF THE ARGUMENT

### DAVID STUCKEY

The district court abused its discretion when it denied defense counsel's motion to withdraw. First, the motion was timely. Second, the district court failed to ask specific and targeted questions that would address Stuckey's dissatisfaction with counsel. Third, both Stuckey and defense counsel showed that there was a sufficient breakdown in communication warranting the withdrawal and appointment of new counsel. Therefore, defense counsel's motion should have been granted.

The district court abused its discretion when it denied Stuckey's *pro se* motion to withdraw his guilty plea as the *Moore* factors weighed in Stuckey's favor. Stuckey's plea was not knowing and voluntary; Stuckey asserted his legal innocence; there was no unreasonable delay between the motion and the guilty plea; Stuckey did not have close assistance of counsel; the government would not be prejudiced and there would be no substantial inconvenience to the court if a withdrawal were granted. Therefore, Stuckey's motion to withdraw his guilty plea should have been granted.

### DEMARIO COVINGTON

The district court abused its discretion when it denied Covington's *pro se* motion to withdraw guilty plea. First, the motion was timely. Second, the district

12

court found it appropriate to grant Covington's *pro se* motion to withdraw counsel after a guilty plea was entered as the *Moore* factors weighed in Covington's favor. Covington asserted his legal innocence; there was no unreasonable delay between the guilty plea and the motion; Covington did not have close assistance of counsel; the government would not be prejudiced and there would be no substantial inconvenience to the court if a withdrawal were granted. Therefore, Covington's motion to withdraw his guilty plea should have been granted.

## ARGUMENT

### DAVID STUCKEY

**I.    The district court abused its discretion when it denied defense counsel's motion to withdraw as counsel.**

**A.    Standard of Review**

This Court reviews the district court's denial of a counsel's motion to withdraw for an abuse of discretion. *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994).

**B.    The district court should have granted defense counsel's motion to withdraw as counsel based on the *Mullen* factors.**

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. An "essential element" of this guarantee is a defendant's right to counsel of his own choosing.

13

*Mullen*, 32 F.3d at 895. Although this right is not absolute, it is "premised on respect for the individual" and is "independent of concern for the objective fairness of the proceeding." *Id.* (citations and quotations omitted). Further, it is well-established that the right to assistance of counsel means the right to "effective" assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 377 (1986) ("[T]he right to counsel is the right to effective assistance of counsel."); *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) ("Our decisions make clear that inadequate assistance does not satisfy the Sixth Amendment right to counsel. . . ."). This Court's general rule is that an indigent defendant must show "good cause" to merit substitution of new appointed counsel. *Mullen*, 32 F.3d at 895. Specifically, this Court considers three factors in assessing a district court's denial of a motion for new counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense. *Id.* (citing *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988)).

### 1. The motion to withdraw was timely.

The timeliness of the motion is balanced against the countervailing public interest to proceed as scheduled. *Gallop*, 838 F.2d at 108 (finding motion made five days before trial untimely); *United States v. Johnson*, 114 F.3d 435, 443 (4th Cir. 1997) (finding timeliness factor favored defendant where motion filed over a

month and a half before trial).

Here, the motion was timely made. Counsel filed the motion over a month before the trial date.  The motion was filed on March 30, 2012 and trial was set for May 15, 2012.  The court held a hearing on the motion on April 3, 2012, still over a month in advance of trial.  Notably, at the hearing the government did not object to the filing of the motion.  Further, notwithstanding both counsel's and Stuckey's representations that Stuckey's dissatisfaction with counsel was irremediable, the court suggested that Stuckey's request for new counsel during the hearing was simply to delay the proceedings.  (J.A. 82-83)  However, it was defense counsel's decision to file a motion to withdraw based on his belief that communication between the two was futile.  (*Id.* at 46-48)  This motion was made well in advance of trial and the court inappropriately placed the public's right to a timely trial ahead of Stuckey's right to counsel.  Therefore, the timeliness factor strongly favors Stuckey.

### 2.    The district court did not perform an adequate inquiry into Stuckey's complaints.

"When a defendant raises a seemingly substantial complaint about counsel, the judge 'has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction.'"  *Mullen*, 32 F.3d at 896 (quoting *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991)).  "The trial court must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern."  *Smith*,

923 F.2d at 1320.

In this case, the district court's inquiry was inadequate. The district court instead repeatedly suggested that Stuckey was lucky to have his current counsel given his experience and qualifications. (J.A. 50-51, 67, 69, 73, 82) Although the court's observations may have been sufficient to address Stuckey's concerns that counsel was not acting in Stuckey's best interests, the district court did nothing to address the specific concern, shared by both Stuckey and defense counsel, that Stuckey did not trust and was not effectively communicating with defense counsel.

Additionally, the district court did not ease Stuckey's concerns about his counsel's failure to keep in contact with him during the four months that he was being transported for a mental evaluation. (*Id.* at 222; J.A. 215) Stuckey had tried to contact counsel via telephone several times without success. (J.A. 52) In fact, Stuckey had only recently returned from being evaluated when counsel decided to file the motion to withdraw. Stuckey clearly had a desire to participate and aid in his defense and counsel's lack of communication with Stuckey for such an extended period of time should have been a major concern to the district court. Furthermore, the district court did not adequately address Stuckey's concerns about counsel failing to inform him of changes in his case or file motions on his behalf. Rather, the district court stated:

> What do you want him to do? He is an experienced lawyer. That is what he is doing. He is doing it. So, for you to tell me that he did not tell you soon enough, I do not think it makes any difference. You had better listen to what he is doing on your behalf, because that is what he did.

(*Id.* at 243)  Stuckey's true concern was the lack of communication between himself and counsel, not whether his attorney was making decisions for his benefit. (*Id.* at 244)  Stuckey cannot participate and aid in his own defense when defense counsel does not inform him of vital aspects of his case. In turn, this caused Stuckey to believe that defense counsel was untrustworthy. As a result, the breakdown in the relationship was irreparable. Because the district court did not sufficiently inquire into the specific concerns raised in the motion to withdraw and at the hearing, it was unable to adequately determine the extent of the breakdown in communication. *See United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777-78 (9th Cir. 2001) ("[I]n most circumstances a court can only ascertain the extent of a breakdown in communication by asking specific and targeted questions.").

### 3.   The conflict between defense counsel and Stuckey was so great that it affected Stuckey's defense.

In defense counsel's motion, he indicated that the relationship between he and Stuckey had "reached an impasse, it is adversarial, it is counterproductive, and the best avenue for protection of the defendant's constitutional rights cannot be afforded him under these circumstances and conditions." (J.A. 37, 46-50)

Indeed, relations were so poor that Stuckey believed that defense counsel was lying to him and failing to inform him of crucial aspects of his case. (J.A. 74-75) This issue was promptly brought to the district court's attention by counsel well in advance of trial. However, the district court found that communication still existed between counsel and Stuckey. (*Id.* at 82-83) This finding is unsupported by the record.

Even though the district court discussed on several occasions that, in its opinion, Stuckey was fortunate to have the particular attorney representing him, this is not sufficient. (J.A. 50-51, 67, 69, 73, 82) Rather, the district court's high regard for counsel's reputation should have indicated to the court that counsel would not have moved to withdraw as counsel unless it was necessary. As the Ninth Circuit has held, "[a] court may not deny a substitution motion simply because the court thinks current counsel's representation is adequate." *United States v. D'Amore*, 56 F.3d 1202, 1206 (9th Cir. 1995), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999) (en banc).

Notably, counsel and Stuckey both attested to a complete breakdown in communication that undermined Stuckey's right to effective assistance of counsel. Stuckey stated that he had not been able to get in touch with counsel while he was being transported for a mental evaluation. (*Id.* at 222) According to Stuckey, this would have been about four months with no communication between himself and

counsel.  (J.A. 215)  However, even when there was communication, it was not productive.  At one point in the hearing, counsel stated, "If [Stuckey is] not going to cooperate, I'm wasting my time going up [to the jail] . . . [i]t's just a dead end. (*Id.* at 245-246)  Counsel clearly believed that the relationship was adversarial and futile.  In fact, their relationship had deteriorated so much during the time of trial that Stuckey did not want his attorney with him during plea negotiations with the government.  (J.A. 329, 335)  The district court was informed of this during the guilty plea hearing on July 9, 2010.  (*Id.* at 329)  At that time, the district court should have been on notice that there was a lack of communication between counsel and Stuckey that was detrimental to Stuckey's defense.  As this Court had held, "[a] total lack of communication is not required.  Rather an examination of whether the extent of the breakdown prevents the ability to conduct an adequate defense is the necessary inquiry."  *Johnson*, 114 F.3d at 443.

Therefore, the district court abused its discretion in denying counsel's motion to withdraw and appoint new counsel, and this Court must vacate Stuckey's conviction and remand with instructions for the district court to substitute new counsel for further proceedings.

19

**II.    The district court abused its discretion when it denied Stuckey's motion to withdraw his guilty plea because the application of the *Moore* factors were in favor of allowing Stuckey to withdraw his guilty plea.**

### A.    Standard of Review

This court reviews the district court's refusal to allow a defendant to withdraw a guilty plea for abuse of discretion. *United States v. Wilson*, 81 F.3d 1300, 1305 (4th Cir. 1996). A defendant has no absolute right to withdraw a guilty plea, and the district court has discretion to decide whether a "fair and just" reason exists upon which to grant a withdrawal. *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003).

### B.    *Moore* Factors

A defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason; or (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d). This court closely scrutinizes the Rule 11 colloquy and attaches a strong presumption that the plea is final and binding if the Rule 11 proceeding is adequate. *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992). The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted. *Wilson*, 81 F.3d at 1307.

A defendant has no absolute right to withdraw a guilty plea, and the district court has discretion to decide whether a fair and just reason exists upon which to grant a withdrawal. *Bowman*, 248 F.3d at 413. A defendant bears the burden of demonstrating that a fair and just reason supports his request to withdraw. *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989). Courts typically consider a variety of non-exclusive factors in determining whether a defendant has met this burden. Specifically, in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), this court noted six factors to be considered in this type of analysis: (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether the defendant has close assistance of competent counsel; (5) whether withdrawal would prejudice the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

The application of the above factors to the instant case shows that the district court abused its discretion and Stuckey should have been permitted to withdraw his guilty plea.

### 1.    Stuckey's plea was not knowing and voluntary.

In order for a guilty plea to be valid, the Constitution imposes "the minimum requirement that [the] plea be the voluntary expression of [the Defendant's] own

choice." *Brady v. United States*, 397 U.S. 742, 748 (1970). Because it operates as a waiver of important constitutional rights, the plea must also be entered "knowingly and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks and citation omitted). It must reflect a "voluntary and intelligent choice among the alternative courses of action open to the Defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In determining whether or not a plea is knowing and voluntary, a Court must look at whether "the advice received from counsel was . . . within the range of competence demanded of attorneys in criminal cases." *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010) (quoting *Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974)).

Stuckey did not consult with his attorney during plea negotiations or at the time of signing the plea agreement. There is also no indication from the record that defense counsel read and reviewed the agreement with Stuckey. According to counsel, once Stuckey met with the prosecutors, counsel asked him what he desired to do and Stuckey stated that he wanted to plead guilty. (J.A. 329) Counsel then had him sign the plea agreement. (*Id.*) In other words, there is no showing from the record that counsel thoroughly reviewed the plea agreement with Stuckey and informed him of the risks, benefits, and consequences of his decision. The district court was informed of Stuckey's acceptance of a plea agreement

*without assistance of counsel.* (*Id.*)

Notably, since April of 2011, Stuckey had always asserted his innocence and desired a jury trial. However, on the eve of trial, Stuckey changed his plea without advice of counsel. (*Id.*) It was later learned that counsel had told Stuckey on the day of jury selection that he would not prevail on his case. (*Id.* at 335) As a result, Stuckey felt compelled to plead guilty:

> And about me talking with [the prosecutors] after he came on trial date and came and talked to me in the room, he said my chances was no way possible of winning a trial. How am I going to go to trial with my attorney when he telling me I have no chance of winning a trial and a month before trial he filed a motion to be relieved from my counsel.
>
> I feel like he wasn't going to give me his full capability of representing me for my freedom. That's why I am talking with [the prosecutors] and telling them I'm wanting to plea, because how I am going to trial if he file a motion a month later saying he want to be dismissed from my counsel.

(*Id.* at 335) Stuckey was so fearful that he would not receive adequate and effective representation at trial that he was essentially coerced into pleading guilty because he felt he had no other options. [W]hen defense counsel coerces the accused to plead guilty, he corrupts both the plea and the arraignment." *Edmonds v. Lewis*, 546 F.2d 566, 569 (4th Cir. 1976). Considering that Stuckey did not want counsel present during the plea negotiations tends to corroborate Stuckey's statements. Therefore, Stuckey's guilty plea was not knowingly and voluntarily

made, and this factor weighs in Stuckey's favor.

### 2.    Stuckey credibly asserted his legal innocence.

"In attempting to withdraw from a guilty plea, a defendant is not required to provide conclusive proof of innocence; however, the defendant's credible assertion of [his] legal innocence is one of the factors the district court must consider." *United States v. Cline*, 286 F. App'x 817, 821 (4th Cir. 2008).

Stuckey contends that he is legally innocent of Count 1 of the indictment to which he pled guilty, and argues that he properly asserted his legal innocence during the district court proceedings. Prior to pleading guilty on May 14, 2012, Stuckey had maintained his plea of not guilty and his desire to have a trial since April of 2011. (J.A. 12)  Stuckey asserted his legal innocence during the April 3, 2012 motion hearing (withdraw counsel) and August 29, 2012 motion hearing (withdraw guilty plea). (J.A. 76-77, 321-322)  He also reiterated his innocence in his *pro se* motion to withdraw his guilty plea. (J.A. 308)  Additionally, the record indicates that Stuckey further asserted his legal innocence at his sentencing hearing on December 4, 2012.  Notably, the district court made numerous offerings to grant Stuckey acceptance of responsibility to reduce his offense level provided that Stuckey would admit guilty.  (*Id.* at 98-111)  Each time Stuckey asserted his innocence. (*Id.*)

THE COURT: . . . I considered acceptance of responsibility, even in my own, on my own motion or on my own raised that issue myself, the defendant has constantly denied his conduct, and he tried to withdraw his plea. . . .  Are you prepared to say that you did what you did that led to your conviction, Mr. Stuckey or not?

DEFENDANT STUCKEY:  No, sir.  Because, like I said, I was misled by two court-appointed attorneys.  And what . . . they got me charged with, what they say I did, they got me charged with a 841, possession.  They ain't never took nothing from my possession.

THE COURT: Well, you pled guilty to guilty to conspiracy to distribute 5 kilograms or more of cocaine or 280 grams or more of crack cocaine.  Do you admit that you did that or not?  Do you admit that you did that or not?

DEFENDANT STUCKEY: No, sir.

(*Id.* at 110-111)  The fact that Stuckey chose to assert his innocence rather than accept the district court's offer of additional leniency at sentencing, tends to establish his credibility on this issue.  Therefore, this factor weighs in Stuckey's favor.

### 3.   There was minimal delay between the entry of the guilty plea and the filing of the withdrawal motion.

There was minimal delay between the entry of Stuckey's plea and his motion to withdraw.  Stuckey mailed a *pro se* motion to withdraw his plea on July 5, 2012 and it was filed on July 9, 2012.  This motion was made less than two months after the Change of Plea Hearing held on May 14, 2012.  *See United States v. Massenburg*, 383 F. App'x 371, 373 (4th Cir. 2010) (two-month delay is not

unreasonable); *Bowman*, 348 F.3d at 415-16 (three-month delay was not prejudicial); *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993) (six months is a considerable delay).  Therefore, the delay between the guilty plea and the filing of the withdrawal motion was not unreasonable or prejudicial and weighs in Stuckey's favor.

### 4.     Stuckey did not have close assistance of counsel.

"To prevail on [the fourth factor, [Brown] must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Bowman*, 348 F.3d at 416 (internal quotation marks and citations omitted).  The relevant inquiry is whether counsel "was reasonable 'under prevailing professional norms,' and in light of the circumstances." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

As argued in Argument I, on several occasions, Stuckey informed the district court that counsel had failed to discuss and inform him about key issues in his case and file motions on his behalf.  (J.A. 57, 59, 72-75)  Additionally, Stuckey was unable to reach counsel for a period of months while Stuckey was in the process of being mentally evaluated despite his efforts to do so.  (*Id.* at 52)  This lack of communication hindered Stuckey's ability to participate and aid in his defense.

Such communication is essential in an attorney-client relationship.

Moreover, the communication that did take place was unproductive. On the eve of trial, counsel told Stuckey that there was no chance of winning his case. (J.A. 335) At this point, counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. This made Stuckey completely untrustworthy of counsel as Stuckey reasonably believed that counsel was not acting in his best interests. (*Id.*) Stuckey found counsel's comments so distressing that Stuckey decided to negotiate with prosecutors about a potential plea without counsel present. (*Id.* at 329) In fact, Stuckey stated that he felt coerced into accepting a plea. (J.A. 296, 335) The Supreme Court has made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1486 (2010). "[P]lea bargains have become so central to today's criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. ____, ____, 132 S. Ct. 1399, 1407 (2012). Having effective counsel during plea negotiations is of the utmost importance, "[a]nything less might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." *Id.* at ____, 132 S. Ct. at 1407-08 (internal

quotation marks and citations omitted).

Stuckey's distrust of counsel forced him to undergo plea negotiations alone. (J.A. 329, 335)  Plea negotiations are a vital part of the criminal process and Stuckey was entitled to effective assistance of counsel at this point because acceptance of a plea agreement necessarily surrenders some of the most fundamental of rights.  However, Stuckey was deprived of the right to effective assistance of counsel.  Additionally, there is no indication in the record that counsel thoroughly read and reviewed the plea agreement with Stuckey before he signed it.  (*Id.* at 329)  Rather, counsel stated that after Stuckey returned from the meeting with prosecutors, he asked what his desire was and Stuckey said he wanted to plead guilty.  (*Id.*)

Stuckey argues that at the time he entered his plea, he felt coerced into doing so because he did not believe he would receive fair and effective representation at trial.   (*Id.* at 335)   Otherwise, Stuckey would not have pleaded guilty. Additionally, Stuckey was not properly counseled and did not have a complete understanding of the promises and guarantees contained in the plea agreement as counsel did not thoroughly discuss the agreement with him before the court accepted Stuckey's guilty plea.  Stuckey initially informed the district court that he felt that he had not had adequate time to speak with his attorney before entering the plea. (J.A. 214-216)  Therefore, counsel's actions fell below an objective standard

of reasonableness and but for these actions, Stuckey would not have pleaded guilty.

### 5.     Withdrawal would not prejudice the government.

The prejudice to the government would have been minimal if Stuckey were permitted to withdraw his guilty plea.  In fact, the only prejudice to the government would have been to proceed with prosecution.  "The Government may not show prejudice by relying on the costs that would inevitably attend the trial of a particular case even in the absence of a withdrawn guilty plea."  *United States v. Faris*, 388 F.3d 452, 459 (4th Cir. 2004).  Rather, "the Government must identify some costs specifically resulting from the entry and subsequent withdrawal of the plea."  *Id.* at 459-460.

Here, the government did not identify any prejudice beyond the requirements of a trial.  Based on the record, the government had already anticipated and should have been completely prepared for trial in that the plea was accepted and entered on the day before trial.  Additionally, while the district court concluded that this factor weighed in favor of the government, it failed to identify its reasoning.  Therefore, this factor should have been deemed neutral and the district court erred in weighing it against Stuckey's motion to withdraw.

### 6. Withdrawal would not inconvenience the district court or waste judicial resources.

The inconvenience to the district court would have been minimal, and in any event, would have been outweighed by the benefits of allowing withdrawal of the guilty plea. In considering this factor, the district court stated that a jury had already been selected at the time of the guilty plea. However, routine requirements that arise in every trial are not sufficient to enhance the already formidable obstacles to withdrawal of a guilty plea. *See Faris*, 388 F.3d at 460. Moreover, even if this factor were decided in the government's favor, this Court has stated that the first, second, and fourth factors are given the most weight. *See United States v. Johnson*, 332 F. App'x. 81, 82 (4th Cir. 2009). Considering that application of each of those factors weighs in Stuckey's favor, the possibility that judicial resources would be wasted would not outweigh Stuckey's showing of a fair and just reason to withdraw his guilty plea.

## DEMARIO COVINGTON

**III.   The district court abused its discretion when it denied Covington's *pro se* motion to withdraw his guilty plea but granted Covington's *pro se* motion to withdraw counsel when a majority of the *Moore* factors weighed in Covington's favor.**

### A. Standard of Review

This Court reviews the district court's refusal to allow a defendant to withdraw a guilty plea for abuse of discretion. *United States v. Wilson*, 81 F.3d

30

1300, 1305 (4th Cir. 1996). A defendant has no absolute right to withdraw a guilty plea, and the district court has discretion to decide whether a "fair and just" reason exists upon which to grant a withdrawal. *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003).

### B.  *Moore* Factors

A defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason; or (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d). This court closely scrutinizes the Rule 11 colloquy and attaches a strong presumption that the plea is final and binding if the Rule 11 proceeding is adequate. *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992). The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted. *Wilson*, 81 F.3d at 1307.

A defendant has no absolute right to withdraw a guilty plea, and the district court has discretion to decide whether a fair and just reason exists upon which to grant a withdrawal. *Bowman*, 248 F.3d at 413. A defendant bears the burden of demonstrating that a fair and just reason supports his request to withdraw. *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989). Courts typically consider a

31

variety of non-exclusive factors in determining whether a defendant has met this burden. Specifically, in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), this court noted six factors to be considered in this type of analysis: (1) whether the defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether the defendant has close assistance of competent counsel; (5) whether withdrawal would prejudice the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

The application of the above factors to the instant case shows that the district court abused its discretion and Covington should have been permitted to withdraw his guilty plea.

### 1. Covington's plea was not knowing and voluntary.

In order for a guilty plea to be valid, the Constitution imposes "the minimum requirement that [the] plea be the voluntary expression of [the Defendant's] own choice." *Brady v. United States*, 397 U.S. 742, 748 (1970). Because it operates as a waiver of important constitutional rights, the plea must also be entered "knowingly and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks and citation omitted). It must reflect a "voluntary

32

and intelligent choice among the alternative courses of action open to the Defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In determining whether or not a plea is knowing and voluntary, a Court must look at whether "the advice received from counsel was . . . within the range of competence demanded of attorneys in criminal cases." *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010) (quoting *Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974)).

Covington did not have competent counsel representing him at the time the plea was entered into. The record indicates that Covington disputed the charges against him and that his counsel and the district court were aware that he disputed the charges. (J.A. 284-285) Further, Covington informed the court that his counsel told him the jury was not a jury of his peers because the jury was white and the white jury would definitely find him guilty. Counsel further advised Covington that if he pled guilty he would be facing no more than twenty years of incarceration. (J.A. 386-392) There is no showing from the record that counsel thoroughly reviewed the plea agreement with Covington and informed him of the actual risks, benefits, and consequences of his decision. The district court was informed of Covington's acceptance of a plea agreement without assistance of counsel. (*Id.*)

Notably, Covington had always disputed the charges against him and indicated he desired a jury trial. (J.A. 20) However, on the day of trial, Covington

changed his plea without advice of counsel.  (*Id.*)  It was later learned that counsel

had told Covington on the day of trial that he would not prevail on his case because

the jury was white and that if he pled he would no face more than 20 years

imprisonment.  (*Id.*)  As a result, Covington felt compelled to plead guilty:

> Like I said, when I was going to trial . . . his advise and
> what he was trying to tell me to do wasn't the right
> advise that I needed to take to be able to enter this plea.
> Like I say, he didn't even know . . . the language about
> what I asked him about inside of the guilty plea.  And
> when I was telling you these things that yes, yes, yes I
> was just going along with what my lawyer told me to do.
>
> [Counsel] wasn't confidence in going to trial for me,
> you know, trying to win this case for me . . . I knew I
> could have won this case 'cause I didn't you know there
> wasn't no evidence . . . from day one . . . I told him that
> I am not guilty of these charges.

(*Id.* at 389-390)   Covington was so fearful that he would not receive adequate and

effective representation at trial that he was essentially coerced into pleading guilty

because he felt he had no other options.  [W]hen defense counsel coerces the

accused to plead guilty, he corrupts both the plea and the arraignment."  *Edmonds*

*v. Lewis*, 546 F.2d 566, 569 (4th Cir. 1976).  Further, at the September motion

hearing, the court found it appropriate to relieve Covington's counsel, who advised

him to enter into a guilty plea and appoint new counsel.  Considering that

Covington disputed the charges against him during the guilty plea and only

changed his plea on the day of trial after discussing the jury makeup with counsel

who the district court later found appropriate to withdraw as Covington's counsel tends to corroborate Covington's statements. Therefore, Covington's guilty plea was not knowingly and voluntarily made, and this factor weighs in Covington's favor.

### 2.    Covington credibly asserted his legal innocence.

"In attempting to withdraw from a guilty plea, a defendant is not required to provide conclusive proof of innocence; however, the defendant's credible assertion of [his] legal innocence is one of the factors the district court must consider." *United States v. Cline*, 286 F. App'x 817, 821 (4th Cir. 2008).

Covington contends that he is legally innocent of Count 1 of the indictment to which he pled guilty, and argues that he properly asserted his legal innocence during the district court proceedings. Prior to pleading guilty on May 15, 2012, Covington had maintained his plea of not guilty and his desire to have a trial since April of 2011. (J.A. 20)  Covington again asserted his legal innocence during the September 2012 *pro se* motion hearings (withdraw guilty plea and withdraw counsel). (J.A. 386-392) Counsel for Covington reiterated Covington's dispute of the charges against him at the December 3, 3013 sentencing hearing.  (J.A. 569) Further, Covington entered into an addendum to his original plea only because his *pro se* motion to withdraw his guilty plea was wrongfully denied. (J.A. 569-574)

The fact that Covington continued to assert his innocence throughout this process and during the sentencing hearing tends to establish his credibility on this issue. Therefore, this factor weighs in Covington's favor.

### 3. There was minimal delay between the entry of the guilty plea and the filing of the withdrawal motion.

There was minimal delay between the entry of Covington's plea and his motion to withdraw. Covington mailed a *pro se* motion to withdraw his plea on August 12, 2012 and it was filed on August 14, 2012. This motion was made less than three months after the Change of Plea Hearing held on May 15, 2012. *See Bowman*, 348 F.3d at 415-16 (three-month delay was not prejudicial); *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993) (six months is a considerable delay). Therefore, the delay between the guilty plea and the filing of the withdrawal motion was not prejudicial and weighs in Covington's favor.

### 4. Covington did not have close assistance of counsel.

"To prevail on [the fourth factor, [Brown] must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Bowman*, 348 F.3d at 416 (internal quotation marks and citations omitted). The relevant inquiry is whether counsel "was reasonable 'under prevailing professional norms,' and in light of the circumstances." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002)

36

(quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

On several occasions, Covington informed the district court that counsel had failed to discuss and intelligently inform him about key issues in his case and file motions on his behalf. (J.A. 362-366) Additionally, counsel failed to supply Covington with necessary discovery documents so that he could adequately prepare for trial (*Id.*) This lack of assistance and communication hindered Covington's ability to participate and aid in his defense. Such communication is essential in an attorney-client relationship.

Moreover, the communication that did take place was unproductive. On the day of trial, counsel told Covington that there was no chance of winning his case because the white jury was not a jury of his peers and would convict him. (J.A. 369-370)

> That morning I was telling my attorney that I don't want to plea. He kept telling me, he kept telling me, you better go ahead and plea. If you don't, you are going to get this. You know, I already have this plea signed up. If you plead right now to this charge, that you will be able to get 20 years or less. He's telling me that look at the jury. They are not my peers. They are going to be all white, and they are going to find me guilty.

(*Id.*) At this point, counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. This made Covington completely lose all trust and confidence in counsel as Covington reasonably believed that counsel was not acting in his best interests. (*Id.*) Covington found counsel's comments so

distressing that Covington decided to change his plea on the day of trial. (*Id*.) In fact, Covington stated that he felt coerced into accepting a plea. (*Id*.) The Supreme Court has made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1486 (2010). "[P]lea bargains have become so central to today's criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. ____, ____, 132 S. Ct. 1399, 1407 (2012). Having effective counsel during plea negotiations is of the utmost importance, "[a]nything less might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." *Id.* at ____, 132 S. Ct. at 1407-08 (internal quotation marks and citations omitted).

Covington's counsel forced him to enter a guilty plea. (J.A. 369) Plea negotiations are a vital part of the criminal process and Covington is entitled to effective assistance of counsel at this point because acceptance of a plea agreement necessarily surrenders some of the most fundamental of rights. However, Covington was deprived of the right to effective assistance of counsel when counsel signed Covington up to plea without first affirming that Covington wanted

to plead guilty. (J.A. 368) The record indicates that counsel did not thoroughly read and review the plea agreement with Covington before he signed it, but instead came to an agreement with the government for Covington to plead without first discussing it with Covington. (*Id.*)

Covington argues that at the time he entered his plea, he felt coerced into doing so because he did not believe he would receive fair and effective representation at trial. (J.A. 368-370) Otherwise, Covington would not have plead guilty. Additionally, Covington was not properly counseled and did not have a complete understanding of the promises and guarantees contained in the plea agreement as counsel did not thoroughly discuss the agreement, but rather told him if he entered a guilty plea he would get twenty years or less imprisonment. (*Id.* at 368) Thus, counsel's actions fell below an objective standard of reasonableness and but for these actions, Covington would not have plead guilty.

Finally, the district court found it appropriate to grant Covington's *pro se* motion to relieve counsel, but did not grant Covington's *pro se* motion to withdraw his guilty plea. (J.A. 397) The district court abused its discretion when it provided Covington with new counsel, appointed on the basis that Covington was not adequately represented during his guilty plea, but in the same proceeding, denied Covington's *pro se* motion to withdraw his guilty plea, the same being entered with counsel, in which the court had obvious concerns with the attorney/client

relationship.  (*Id*.)  That the district court appointed Covington new counsel but would not withdraw the guilty plea shows that counsel was ineffective and that the district court abused its discretion.

### 5.    Withdrawal would not prejudice the government.

The prejudice to the government would have been minimal if Stuckey were permitted to withdraw his guilty plea.  In fact, the only prejudice to the government would have been to proceed with prosecution.  "The Government may not show prejudice by relying on the costs that would inevitably attend the trial of a particular case even in the absence of a withdrawn guilty plea."  *United States v. Faris*, 388 F.3d 452, 459 (4th Cir. 2004).  Rather, "the Government must identify some costs specifically resulting from the entry and subsequent withdrawal of the plea."  *Id.* at 459-460.

Here, the government did not identify any prejudice beyond the requirements of a trial.  Based on the record, the government had already anticipated and should have been completely prepared for trial in that the plea was accepted and entered on the day before trial.  Additionally, while the district court concluded that this factor weighed in favor of the government, it failed to identify its reasoning.  Therefore, this factor should have been deemed neutral and the district court erred in weighing it against Covington's motion to withdraw.

**6.    Withdrawal would not inconvenience the district court or waste judicial resources.**

The inconvenience to the district court would have been minimal, and in any event, would have been outweighed by the benefits of allowing withdrawal of the guilty plea.  In considering this factor, the district court stated that a jury had already been selected at the time of the guilty plea.  However, routine requirements that arise in every trial are not sufficient to enhance the already formidable obstacles to withdrawal of a guilty plea.  *See Faris*, 388 F.3d at 460.  Moreover, even if this factor were decided in the government's favor, this Court has stated that the first, second, and fourth factors are given the most weight.  *See United States v. Johnson*, 332 F. App'x. 81, 82 (4th Cir. 2009).  Considering that application of each of those factors weighs in Covington's favor, the possibility that judicial resources would be wasted would not outweigh Covington's showing of a fair and just reason to withdraw his guilty plea

## <u>CONCLUSION</u>

Based upon the foregoing argument and citations of authority, the appellants, David Stuckey and Demario Covington, respectfully request that this Court reverse their convictions.

41

Respectfully Submitted,

By: /s/ M.W. Cockrell, III
By: /s/ Nicole N. Mace

*Attorneys for Appellants*

Nicole N. Mace
The Mace Firm
1341 44th Avenue North
Suite 205
Myrtle Beach, SC 29577
(843) 839-2900

M.W. Cockrell, III
Cockrell Law Firm, PC
Barrister Building
159 Main Street
Chesterfield, SC 29709
(843) 623-5911

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The appellants respectfully submit that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

Nicole N. Mace
The Mace Firm
1341 44th Avenue North
Suite 205
Myrtle Beach, SC 29577

M.W. Cockrell, III
Cockrell Law Firm, PC
Barrister Building
159 Main Street
Chesterfield, SC 29709
(843) 623-5911

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 12-5005-L          **Caption:** US v. DAVID STUCKEY & DEMARIO COVINGTON

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

☑      this brief contains _____9,859_____ [*state the number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐      this brief uses a monospaced typeface and contains _____ [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

☑      this brief has been prepared in a proportionally spaced typeface using
MS Word 2010 _____ [*state name and version of word processing program*] in
Times New Roman, 14 point _____ [*state font size and name of the type style*]; *or*

☐      this brief has been prepared in a monospaced typeface using
_____ [*state name and version of word processing program*]
with _____ [*state number of characters per inch and name of type style*].

(s)   Nicole N. Mace _____

Attorney for___Stuckey (Appellant)_____

Dated:___6/26/2013_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Alfred William Walker Bethea Jr.
OFFICE OF THE UNITED STATES ATTORNEY
P. O. Box 1567
Florence SC 29501-0000
(843) 665-6688
Buddy.Bethea@usdoj.gov

*/s/ Catherine B. Simpson*
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664

Filing and service were performed by direction of counsel